IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| St. Vincent Mercy Medical Center, | Case No. 3:05 CV 7485 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Michael O. Leavitt, | |
| Defendant. | |

This matter is before the Court on Cross-Motions for Summary Judgment (Doc. Nos. 20, 21). The Court heard oral argument on these Motions on March 7, 2007. For the reasons stated below, Defendant's Motion is granted and Plaintiff's Motion is denied.

**BACKGROUND**

Plaintiff St. Vincent Mercy Medical Center is a tertiary-care hospital located in Toledo, Ohio. For the past three years, it received an increased reimbursement rate for its Medicare patients because it was classified with Ann Arbor hospitals. After a recent administrative rule change, however, St. Vincent no longer qualifies for this classification. The instant action challenges this administrative action as applied to St. Vincent.

**1.    Medicare Reimbursement**

Under the Medicare Prospective Payment System, hospitals are reimbursed a standard rate for inpatient hospital services provided to Medicare beneficiaries. A portion of each hospital's Medicare reimbursement represents costs attributable to wages and wage-related costs. This wage index "reflects the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." 42 U.S.C. § 1395ww(d)(3)(E)(i). For the purpose of

determining the wage index, the Secretary of Health and Human Services (the Secretary) has defined "geographic area" using statistical areas defined by the Office of Management and Budget (OMB) (Stipulation, Doc. No. 17, ¶ 2). These "geographic areas" are determined as follows (*Id*. at ¶¶ 2(1) - 2(3)):

1)  where a "Metropolitan Statistical Area" (MSA) (as defined by OMB) is divided into "Metropolitan Divisions" (also defined by OMB), each Metropolitan Division is one geographic area;

2)  for MSAs not divided into Metropolitan Divisions, each MSA constitutes one geographic area;

3)  within each state, all counties that are not in any MSA together comprise a single "rural" geographic area for that state.

MSA boundaries are redrawn after each census. Within each geographic area, a hospital's reimbursement amount (per admission) is adjusted by the same wage index. St. Vincent does not challenge the use of MSAs to define geographic areas for Medicare Reimbursement, and courts have held that the decision to use MSAs was within the discretionary powers of the Department of Health and Human Services. *See Bellevue Hosp. Center v. Leavitt*, 443 F. 3d 163 (2d Cir. 2006).

### 2. Reclassification

The Medicare Act (the Act) provides a mechanism by which hospitals can seek reclassification to a different geographic area. 42 U.S.C. § 1395ww(d)(10). An application for reclassification must first be filed with the Medicare Geographic Classification Review Board (MGCRB). *Id*. After the application is filed, the MGCRB has 180 days to render its decision and the Secretary has 90 days to appeal. 42 U.S.C. § 1395ww(d)(10)(C)(ii). If granted, a reclassification is effective for three fiscal years. 42 U.S.C. § 1395ww(d)(10)(D)(v).

2

In order to be reclassified to a new geographic area, a hospital must show: (1) it is physically proximate to the area to which it seeks reclassification; and (2) its labor costs are "comparable" to that area (Stip. ¶ 9; 42 C.F.R. § 412.230). To satisfy the "proximity" requirement, the hospital seeking reclassification must either be located within fifteen miles of the area to which it seeks reclassification, or fifty percent of its employees must live in that area. 42 C.F.R. § 412.230(b)(1)-(2). To satisfy the "comparable cost" requirement, the hospital must meet a number of criteria, including that its average hourly wage is at least 108 percent of the average hourly wage of all hospitals in the geographic area in which the hospital is physically located. 42 C.F.R. § 412.230(d)(1).

St. Vincent is physically located within the Toledo MSA (Stip. ¶ 5). In 2003, St. Vincent petitioned the MGCRB for reclassification to the Ann Arbor MSA. At that time, St. Vincent met both the proximity and comparable-cost requirements, and its request was approved. *Id*. at ¶¶ 8, 10. This reclassification was effective for fiscal years 2004 through 2006. *Id*. at ¶ 8.

### 3. **Geographic Areas Are Redrawn**

After the 2000 decennial census, OMB adopted new definitions for MSAs. 65 Fed. Reg. 82228 (Dec. 27, 2000). These new definitions (coupled with new census data) resulted in an overall increase in the number of counties included within MSAs. On the other hand, some counties formerly included in MSAs no longer qualified and were designated "rural." In 2004, the Secretary issued a proposed rule and asked for public comment on whether to change Medicare's geographic-area definitions in light of the new MSA definitions. 69 Fed. Reg. 28195, 28249-52 (May 18, 2004). Plaintiff submitted a comment detailing the adverse financial effect the new definitions would have on St. Vincent (Stip. Ex. A), but the Secretary ultimately adopted the new MSA definitions for Medicare payments. 69 Fed. Reg. 48916, 49027-28 (Aug. 11, 2004). This change has been

3

challenged in the courts, but was upheld as reasonable. *See Bellevue Hosp. Center, supra.* Defendant stipulated that, in this rulemaking, the Secretary did not specifically consider the fiscal impact on St. Vincent (Stip. ¶ 4).

In addition to the new MSA definitions, the Secretary's August 11, 2004 final rule included transition periods to help some hospitals adjust to lower reimbursement rates. For instance, the Secretary "decided to provide a 1-year transition blend for hospitals that, due solely to the changes in the labor market definitions, experience a decrease in their FY [Ficsal Year] 2005 wage index. . . ." 69 Fed. Reg. at 49033. Additionally, the Secretary decided to allow "currently urban hospitals that become rural" under the new MSA definitions "to maintain their assignment to the MSA where they are currently located for the 3-year period FY 2005, FY 2006, and FY 2007." *Id.* The Secretary clearly stated that these newly-rural hospitals were assigned to their former MSA for wage index purposes **only**. 69 Fed. Reg. at 49033 ("Thus, it is the wage index, but not the urban or rural status, of these hospitals that is being affected by this transition").

### 4. St. Vincent No Longer Qualifies For Reclassification

When St. Vincent was granted reclassification in 2003, the Ann Arbor MSA included Washtenaw, Livingston, and Lenawee counties. *Id.* at ¶ 16. St. Vincent is located within fifteen miles of Lenawee County, which was sufficient to satisfy the proximity requirement of 42 C.F.R. § 412.230(b)(1) (Stip. ¶ 17). When the new MSAs were redrawn, however, Lenawee and Livingston Counties were no longer part of the Ann Arbor MSA. *Id.* at ¶ 18. Accordingly, St. Vincent is no longer located within fifteen miles of the Ann Arbor MSA and cannot satisfy the 42 C.F.R. § 412.230(b)(1) proximity test. Further, as substantially less than fifty percent of Plaintff's employees reside in the Ann Arbor MSA, St. Vincent cannot satisfy the  42 C.F.R. § 412.230(b)(2) proximity

4

test (Stip. ¶ 14). Because St. Vincent cannot meet either proximity test, it no longer qualifies for reclassification.

When Lenewee County was removed from the urban Ann Arbor MSA, is was re-designated as "rural" and placed in the Michigan rural geographic area. This change from an urban MSA to a rural geographic area resulted in all hospitals located within Lenawee County qualifying for the three-year transition period maintaining their assignment to the Ann Arbor MSA for Fiscal Years 2005 through 2007. 69 Fed. Reg. at 49033.

### 5. St. Vincent Files Suit

St. Vincent's reclassification to the Ann Arbor MSA expired on October 1, 2006, the end of the 2006 fiscal year. St. Vincent did not file an application for reclassification for fiscal year 2007 or 2008 (Kirsch Aff. ¶ 2). Indeed, had it filed such an application, it would have been denied (Stip. ¶ 7). Instead, St. Vincent filed a request for a hearing with the Provider Reimbursement Review Board (PRRB) with respect to its fiscal year 2005 reimbursement. *Id.* at ¶ 21. The PRRB held that there was "no finding of facts for resolution by the Board," but granted expedited judicial review on October 24, 2005 (Admin. Record, Doc. No. 11, p. 3; Stip. ¶ 22).

St. Vincent filed the instant action on December 22, 2005, seeking relief from the Secretary's implementation of the new hospital labor market classification rules (Amended Complaint, Doc. No. 5, ¶ 2). Specifically, St. Vincent seeks a determination that the Secretary acted in an arbitrary and capricious manner by precluding St. Vincent from being reclassified to the Ann Arbor MSA. St. Vincent's argument is summarized as follows (Pl.'s Reply, Doc. No. 34, p.2):

5

> The question before this Court is whether it is arbitrary, capricious and contrary to law for [the Secretary] to retain Lenawee County in the Ann Arbor MSA but order that St. Vincent is automatically barred from reclassification because Lenawee is not in that MSA. [The Secretary's] disparaging comments notwithstanding, it cannot simultaneously treat Lenawee as in the Ann Arbor MSA and out of the Ann Arbor MSA.

Defendant responds with three primary arguments: (1) the Court lacks subject matter jurisdiction over this claim; (2) St. Vincent's claim is barred because it failed to file a timely request for reclassification; and (3) the administrative action here was not arbitrary or capricious.

## DISCUSSION

### 1. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). This case is particularly appropriate for disposition on summary judgment because the parties have stipulated as to all material facts.

### 2. Standard of Review - Administrative Procedure Act

"Pursuant to 42 U.S.C. § 1395oo(f)(1), the standard for judicial review of the Secretary's actions is governed by the Administrative Procedure Act [APA], 5 U.S.C. § 706." *Sarasota Memorial Hosp. v. Shalala*, 60 F. 3d 1507, 1510-11 (11th Cir. 1995). Section 706 of the APA authorizes

6

judicial review of agency decisions. 5 U.S.C. § 706. Under this section, the Court, after review of the relevant legal questions and, where necessary, shall --

>   (2) hold unlawful and set aside agency action, findings, and conclusions found to be --
>
>>   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]
>>
>>   (E) unsupported by substantial evidence . . . .

5 U.S.C. § 706(2)(A), (E). In determining whether a particular administrative action is arbitrary or capricious, courts may intervene to ensure the agency has "examined the relevant data and articulated a satisfactory explanation for its action." *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). "Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action." *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999).

As noted recently by the Sixth Circuit, the standard of review is narrow and deferential, as "the court is not empowered to substitute its judgment for that of the agency." *Northeast Ohio Regional Sewer District v. United States EPA*, 411 F.3d 726, 732-33 (6th Cir. 2005) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Moreover, the burden of proof is on the aggrieved party seeking to establish the invalidity of the administrative action. *Warren v. U.S.*, 932 F.2d 582, 586 (6th Cir. 1991); *Carabell v. United States Army Corps of Eng'rs*, 257 F. Supp. 2d 917, 926 (E.D. Mich. 2003), aff'd 391 F.3d 704 (6th Cir. 2004); *Burkholder v. Wykle*, 268 F.Supp.2d 835, 841 (N.D. Ohio 2002), aff'd 58 Fed. Appx. 94 (6th Cir. 2003).

### 3. Subject Matter Jurisdiction

Defendant first contends the Court lacks subject matter jurisdiction over St. Vincent's claim. Specifically, the Secretary argues that judicial review of any MGCRB decision is expressly barred by 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). This section states that "[t]he decision of the Secretary shall be final and shall not be subject to judicial review." *Id.* The purpose of this section is to "[make] the reclassification decisions final, and not subject to later modification by courts, thus allowing the Secretary to determine payment rates and ensure budget neutrality." *Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 385 (9th Cir. 1996).

This section is inapplicable to the instant case. The full text of this section reads as follows (42 U.S.C. § 1395ww(d)(10)(C)(iii)(II)):

> (II) Appeal of decisions of the [MGCRB] shall be subject to the provisions of section 557b of title 5, United States Code. The Secretary shall issue a decision on such an appeal not later than 90 days after the date on which the appeal is filed. The decision of the Secretary shall be final and shall not be subject to judicial review.

The plain language of this section only prohibits judicial review of the Secretary's decision of MGCRB appeals. Here, however, St. Vincent never filed an application for reclassification for fiscal year 2007 or 2008 (Kirsch Aff. ¶ 2). There was no MGCRB decision to appeal from, and no ruling by the Secretary on any appeal. 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II) is therefore inapplicable, because St. Vincent is not seeking judicial review of an appeal of a MGCRB decision. Accordingly, the Court has subject matter jurisdiction over St. Vincent's claim.

### 4. Failure to File a Timely Reclassification Application

Defendant's next argument is that St. Vincent's claim is barred because it failed to file a timely application for reclassification. The Act requires that a request for reclassification must be filed "not later than the first day of the 13-month period ending on September 30 of the preceding fiscal year."

8

42 U.S.C.§ 1395ww(d)(10)(B)(ii). St. Vincent does not dispute that it failed to file a timely application, and both parties agree that had such an application been filed, it would have been denied (Stip. ¶ 7). Defendant, however, claims that the failure to file a timely application bars reclassification, regardless of the merits of the request (relying on *Jordan Hosp. v. Shalala*, 276 F.3d 72 (1st Cir. 2002), *cert. denied*, 537 U.S. 812 (2002)).

*Jordan* is a case enforcing the deadline for filing a reclassification application. In *Jordan*, the plaintiff hospital failed to file a reclassification application because, based on wage data published in Federal Register, it did not appear to satisfy the comparable-cost requirement for reclassification. *Id*. at 76. This wage data, however, was incorrectly calculated because a hospital had submitted inaccurate data. *Id*. Upon learning of this mistake, the plaintiff filed a reclassification application which was subsequently denied as untimely. The court held the "unusually emphatic form" of the application deadline language of 42 U.S.C. § 1395ww(d)(10)(C)(ii) cannot be read to "[create] or even [infer] an implied equitable tolling exception." *Jordan*, 276 F.3d at 80 (quoting *United States v. Brockamp*, 519 U.S. 347, 350-52 (1997); *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 350 (3d Cir. 2000)).

*Jordan* is inapplicable here because St. Vincent does not seek equitable tolling of the application deadline. In fact, St. Vincent does not even ask the Court to order reclassification of St. Vincent to the Ann Arbor MSA. "Rather it seeks this Court's determination that it was arbitrary and capricious for HHS to retain Lenawee in the Ann Arbor MSA, but then refuse to consider it part of that MSA for St. Vincent's proximity determination" (Pl.'s Memo. Contra, Doc. No. 32, p. 4). Whether or not St. Vincent filed a timely reclassification application is wholly irrelevant to the justiciable question of whether the agency action challenged here was arbitrary or capricious.

9

Accordingly, St. Vincent's failure to file a timely application for reclassification does not preclude its claim in the instant action.

### 5. The Secretary's Transition Decisions Were Reasonable

Having cleared the above procedural hurdles, it is appropriate to reach the merits of this dispute: namely, was it arbitrary and capricious for the Secretary to provide Lenawee County hospitals with a three-year transition period, but not allow St. Vincent use of the geographic boundary of Lenawee County for its proximity determination during the same three-year time period?

The Court finds it was reasonable for the Secretary to provide newly-rural hospitals with a transition period. After considering comments solicited from the public, the Secretary decided to provide a "longer transition for these hospitals because, as a group they have experienced a steeper and more abrupt reduction in their wage index due to the labor market revisions." 69 Fed. Reg. at 49033. This is due, in part, to the fact that each state's rural geographic area receives the lowest wage index adjustment of any geographic area within each state. *See* 42 U.S.C. § 1395ww(d)(8)(C)(iii). The Secretary "reasonably held harmless for three years those hospitals that would see the most drastic cuts to their wage indices . . . ." *Bellevue Hosp. Center*, 443 F.3d at 177.

This is not to say that Defendant ignored the fact that other hospitals would experience a decrease in their wage indices. Rather, the Secretary "decided to provide a 1-year transition blend for hospitals that, due solely to the changes in the labor market definitions, experience a decrease in their FY 2005 wage index compared to the wage index they would have received using the labor market areas included in calculating their FY 2004 wage index." 69 Fed. Reg. at 49033. St. Vincent would presumably qualify for this one-year transition period; however, St. Vincent was already reclassified to the Ann Arbor MSA for fiscal years 2004 through 2006 based upon its earlier

10

application.[1] The fact that newly-rural hospitals were granted a longer transition period is not unreasonable and does not constitute arbitrary and capricious favoritism. *Bellevue Hosp. Center*, 443 F.3d at 177.

In *Bellevue*, plaintiffs similarly argued that the new rules favored rural hospitals by allowing them a three-year transition period. The Court held:

> The defendant reasonably held harmless for three years those hospitals that would see the most drastic cuts to their wage indices, while declining to do so for hospitals that saw much less dramatic (if still significant) changes. Because plaintiffs and the formerly rural hospitals are not similarly situated, it was not arbitrary or capricious for CMS to treat them dissimilarly in this respect. *Id.*

The fundamental flaw in the instant case is Plaintiff's argument that "[Defendant's] administrative determination that St. Vincent is no longer eligible for Ann Arbor MSA classification is inconsistent with the Medicare [Act] . . . " (Pl.'s Memo. in Support, Doc. No. 21, p. 14), and that it "objects only to HHS's arbitrary and capricious actions with respect to application of guidelines to St. Vincent in this extraordinary situation" (Pl.'s Reply, Doc. No. 34, p. 5). The Secretary made no such individual determination. Rather, the agency adopted updated "geographic area" definitions that it felt best suited the national hospital system as a whole.

St. Vincent is essentially seeking individualized treatment here, but the agency had to take into account the entire country and make determinations that could be consistently applied to all hospitals. It would not be practical for the Secretary to individually consider the specific fiscal impact on every hospital in the United States. Further, such individualized treatment would be improper, as Congress deliberately designed a system in which the wage index would not be based on a hospital's own wage

---

[1] St. Vincent benefitted from this "carryover" following the new MSA definitions and, as a practical matter, received a two-year transition period. Only one year, 2007, were Lenawee County hospitals classified to Ann Arbor when St. Vincent was not.

11

level. Indeed, "each geographic area must include enough hospitals that their costs can be meaningfully averaged and individual hospitals do not get reimbursed for their own actual costs." *Bellevue Hosp. Center*, 443 F.3d at 175.

The Record reflects that the agency "examined the relevant data and articulated a satisfactory explanation for its action." *County of Los Angeles*, 192 F.3d at 1021 (quoting *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43). Accordingly, the Secretary did not act in an arbitrary or capricious manner, and Defendant's Motion for Summary Judgment (Doc. No. 20) is granted, and Plaintiff's Motion (Doc No. 21) is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 23, 2007